UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMCAST CORPORATION; COMCAST
CABLE COMMUNICATIONS, LLC;
COMCAST CABLE COMMUNICATIONS
MANAGEMENT, LLC; COMCAST OF
HOUSTON, LLC; COMCAST BUSINESS
COMMUNICATIONS, LLC; COMCAST
HOLDINGS CORPORATION; COMCAST
SHARED SERVICES, LLC; and COMCAST
STB SOFTWARE I, LLC,

                    Plaintiffs,

          - against -

ROVI CORPORATION; ROVI GUIDES, INC.;
ROVI TECHNOLOGIES CORP.; and VEVEO,
INC.

                    Defendants.

Civil Action No. 1:16-cv-03852-AT

ORAL ARGUMENT REQUESTED

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York  10017
(212) 450-4000

*Attorneys for Plaintiffs Comcast Corporation;
Comcast Cable Communications, LLC; Comcast
Cable Communications Management, LLC;
Comcast of Houston, LLC; Comcast Business
Communications, LLC; Comcast Holdings
Corporation; Comcast Shared Services, LLC; and
Comcast STB Software I, LLC*

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................... 4

ARGUMENT ........................................................................................................................ 9

ROVI SHOULD BE PRELIMINARILY ENJOINED FROM PROSECUTING
ITS PATENT ACTIONS IN OTHER FORUMS ................................................................. 9

I.  Comcast Is Likely to Succeed on the Merits of Its Breach of Contract Claims .................. 10

  A.  Rovi's Infringement Actions Against Comcast "Arise" from or "in
      Connection with" the CLA ................................................................................ 12

    1.  Rovi's "Actions" and Each Cause of Action Therein Accuse
        Comcast's Legacy Guides ................................................................... 14

    2.  The CLA Supplies Defenses to Rovi's Patent Infringement
        Claims Accusing Comcast's Legacy Guides ....................................... 14

  B.  Rovi's Infringement Claims Against the STB Suppliers
      Also "Arise" from or "in Connection with" the CLA ........................................ 17

  C.  Rovi's Infringement Claims Against Comcast and the STB Suppliers
      ██████████████  the LDA ................................................................... 19

II.  Comcast Will Be Irreparably Harmed Absent a Preliminary Injunction .......................... 21

III.  The Balance of Equities Favors Comcast ........................................................................ 23

IV.  The Public Interest Favors Issuance of a Preliminary Injunction ..................................... 23

CONCLUSION ................................................................................................................... 24

# TABLE OF AUTHORITIES

PAGE

<u>CASES</u>

*Am. Tel. & Tel. Co. v. Milgo Elec. Corp.*,
    416 F. Supp. 951 (S.D.N.Y. 1976)................................................................22

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
    134 S. Ct. 568 (2013)........................................................................3, 4, 23

*Avago Techs. U.S. Inc. v. IPtronics, Inc.*,
    2013 WL 623042 (N.D. Cal. Feb. 15, 2013) ..................................................22

*Babcock & Wilcox Co. v. Control Components, Inc.*,
    161 Misc. 2d 636 (N.Y. Sup. Ct. 1993) ......................................................21

*Bernstein v. Wysoki*,
    77 A.D.3d 241 (2d Dep't 2010) ........................................................12, 17

*Bluefire Wireless, Inc. v. Cloud9 Mobile Commc'ns, Ltd.*,
    2009 WL 4907060 (S.D.N.Y. Dec. 21, 2009) ..............................................18

*Brooke Grp. Ltd. v. JCH Syndicate 488*,
    87 N.Y.2d 530 (1996) ....................................................................4, 10, 23

*Ciena Corp. v. Nortel Networks Inc.*,
    2005 WL 1189881 (E.D. Tex. May 19, 2005) ......................................9, 21, 23

*Corcovado Music Corp. v. Hollis Music, Inc.*,
    981 F.2d 679 (2d Cir. 1993)................................................................20

*Cuno v. Hayward Indus. Prods., Inc.*,
    2005 WL 1123877 (S.D.N.Y. May 10, 2005) ..............................................20

*Devos Ltd. v. Rx Recalls, Inc.*,
    12 Misc. 3d 1186(A) (N.Y. Sup. Ct. Dec. 2, 2005) ........................................11

*Dogmoch Int'l Corp. v. Dresdner Bank AG*,
    304 A.D.2d 396 (1st Dep't 2003) ............................................................18

*Erie Ins. Co. of N.Y. v. AE Design, Inc.*,
    104 A.D.3d 1319 (4th Dep't 2013)..........................................................12

*Freeford Ltd. v. Pendleton*,
    53 A.D.3d 32 (1st Dep't 2008) ...................................................................11, 18

*Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*,
    2010 WL 5559750 (D.N.M. Nov. 30, 2010), *aff'd*, 651 F.3d 1355 (Fed. Cir. 2011)........21

*Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*,
    651 F.3d 1355 (Fed. Cir. 2011).................................................................... *passim*

*Golan v. Pingel Enter., Inc.*,
    310 F.3d 1360 (Fed. Cir. 2002).........................................................................9

*HMS Holdings Corp. v. Moiseenko*,
    49 Misc. 3d 1215(A) (N.Y. Sup. Ct. Nov. 13, 2015).........................................20

*ICOS Vision Sys. Corp. N.V. v. Scanner Techs. Corp.*,
    2012 WL 512641 (S.D.N.Y. Feb. 15, 2012) .....................................................15

*In re Omeprazole Patent Litig.*,
    490 F. Supp. 2d 381 (S.D.N.Y. 2007), *aff'd*, 281 F. App'x 974 (Fed. Cir. 2008)..............9

*In re Optimal U.S. Litig.*,
    813 F. Supp. 2d 383 (S.D.N.Y. 2011)..............................................................18

*Jacobs v. Nintendo of Am., Inc.*,
    2003 WL 25738602 (M.D. Fla. Jan. 31, 2003), *aff'd*, 370 F.3d 1097 (Fed. Cir. 2004) ....15

*Keurig, Inc. v. Sturm Foods, Inc.*,
    732 F.3d 1370 (Fed. Cir. 2013).......................................................................16

*LG Elecs., Inc. v. Hitachi, Ltd.*,
    655 F. Supp. 2d 1036 (N.D. Cal. 2009) ..........................................................16

*Martinez v. Bloomberg LP*,
    740 F.3d 211 (2d Cir. 2014)...........................................................................11

*Mercury W. A.G., Inc. v. R.J. Reynolds Tobacco Co.*,
    2004 WL 421793 (S.D.N.Y. Mar. 5, 2004) ......................................................23

*Montoya v. Cousins Chanos Casino, LLC*,
    34 Misc. 3d 1211(A) (N.Y. Sup. Ct. Jan. 12, 2012) ...................................11, 20

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972).................................................................................4, 10, 23

*N.Y. Progress & Prot. PAC v. Walsh*,
    733 F.3d 483 (2d Cir. 2013)..................................................................................10

*Phillips v. Audio Active Ltd.*,
    494 F.3d 378 (2d Cir. 2007)......................................................................12, 17, 20

*Quanta Computer, Inc. v. LG Elecs., Inc.*,
    553 U.S. 617 (2008)..............................................................................................16

*Sterling Nat'l Bank as Assignee of NorVergence, Inc. v. E. Shipping Worldwide, Inc.*,
    35 A.D.3d 222 (1st Dep't 2006) ...........................................................................10

*Tessera, Inc. v. Advanced Micro Devices, Inc.*,
    2007 WL 3232441 (N.D. Cal. Nov. 1, 2007) ..................................13, 16, 19, 23

*Tex. Instruments Inc. v. Tessera, Inc.*,
    231 F.3d 1325 (Fed. Cir. 2000)....................................................................*passim*

*Tourtellot v. Harza Architects, Eng'rs. & Constr. Managers*,
    55 A.D.3d 1096 (3d Dep't 2008).....................................................................12, 16

*Triple Z Postal Servs., Inc. v. United Parcel Serv., Inc.*,
    13 Misc. 3d 1241(A) (N.Y. Sup. Ct. Nov. 24, 2006).........................................11

*Wang Labs., Inc. v. Mitsubishi Elecs. Am. Inc.*,
    103 F.3d 1571 (Fed. Cir. 1997)............................................................................15

*Weingrad v. Telepathy, Inc.*,
    2005 WL 2990645 (S.D.N.Y. Nov. 7, 2005).......................................................21

S<small>TATUTES</small>

28 U.S.C. § 1295(a)(1)................................................................................................9

O<small>THER</small> A<small>UTHORITIES</small>

Mark Whitaker & Lauren Emerson, *Litigation Before the International Trade
Commission:  A Powerful Option for Brand Owners, When the Shoe Fits*,
27 Intell. Prop. & Tech. L.J. 3 (2015)......................................................................22

John C. Evans, Note, *Addressing Default Trends in Patent-Based Section
337 Proceedings in the United States International Trade Commission*,
106 Mich. L. Rev. 745 (2008)...................................................................................22

Plaintiffs respectfully submit this memorandum of law in support of their motion pursuant to Rule 65(a) of the Federal Rules of Civil Procedure for a preliminary injunction (i) enjoining Defendants Rovi Corporation, Rovi Guides, Inc., Rovi Technologies Corp., and Veveo, Inc. (together, "Rovi") from continuing to prosecute patent infringement actions in the U.S. District Court for the Eastern District of Texas and before the U.S. International Trade Commission (the "ITC") in violation of written contracts between Comcast and Rovi, and (ii) ordering Rovi to take all steps necessary to secure the termination of those actions.[1]

## PRELIMINARY STATEMENT

From the outset of their long-standing commercial relationship, Rovi and Comcast have agreed to litigate disputes implicating their software and patent licensing agreements exclusively in New York.  In clear violation of those agreements, Rovi initiated ***three*** different patent infringement actions against Comcast and certain of its suppliers in jurisdictions ***other*** than New York—two in the Eastern District of Texas and one before the ITC.

Rovi's three actions allege that Comcast's interactive programming guides ("IPGs" or "guides") and set-top boxes ("STBs") infringe numerous Rovi patents.  Those actions, however, were required to be brought in New York under the terms of two separate agreements between Comcast and Rovi.  *First*, a 2010 software cross license agreement (the "CLA") granted to Comcast a perpetual license to the software that implements Comcast's legacy or "native" IPGs ("Legacy Guides"), which are resident on a majority of the STBs that Rovi accuses of infringement.  That software license bars Rovi's patent claims as to those IPGs and STBs.  It also

---

[1] Plaintiffs are Comcast Corporation, Comcast Cable Communications, LLC, Comcast Cable Communications Management, LLC, Comcast of Houston, LLC, Comcast Business Communications, LLC, Comcast Holdings Corporation, Comcast Shared Services, LLC, and Comcast STB Software I, LLC (together, "Comcast").

requires that "***any suit, action or proceeding*** . . . based on ***any matter arising out of or in connection with***" the CLA or the transactions it contemplates be brought in New York.  *Second*, a distinct license and distribution agreement (the "LDA") granted an express patent license to Comcast, ███████████████████████████, for the period prior to March 31, 2016.  The LDA bars Rovi's claims against Comcast and its suppliers for alleged infringement before that date. ██████████████████████████████████████ ████████████████████

Having bargained for the right to litigate licensing-related disputes exclusively in New York, Comcast now faces burdensome, fast-paced, and duplicative litigation on two other fronts. Accordingly, to avoid the irreparable harm that would result from depriving Comcast of its bargained-for forum, Comcast seeks a preliminary injunction to halt Rovi's prosecution of its infringement actions outside New York and to secure their termination.

All of the prerequisites for injunctive relief are satisfied in this case:

*Likelihood of Success on the Merits*.  Rovi's three actions outside New York breach the forum selection clauses of both the CLA and the LDA.  They all "arise out of or in connection with" the CLA, and thus breach its forum selection clause, because Rovi directs infringement allegations to Comcast's Legacy Guides, which are licensed under that agreement.  Specifically, the CLA provides Comcast with a perpetual license to the software implementing the Legacy Guides that Rovi now accuses of infringement, impliedly granting Comcast a license under any Rovi patents implicated by that software.  The CLA also constitutes a sale in exchange for valuable consideration that bars Rovi's claims under the doctrine of patent exhaustion.

The three actions also independently ████████ the LDA, and thus breach its forum selection clause, because they include allegations that Comcast violated Rovi's patent rights

2

during the term of the express patent license granted in that agreement.  Under controlling law, patent infringement suits ███████████████████████ where, as here, the actions present a non-frivolous dispute regarding the scope of a patent license.

Finally, Rovi's allegations against the STB suppliers named in each action (the "STB Suppliers") also breach its contractual forum selection obligations.  Because those claims are part of the same "actions" as the claims brought against Comcast, they too should have been brought in New York.  Moreover, because the STB Suppliers' alleged liability, according to Rovi, is based on their supply to Comcast of the STBs that support the allegedly infringing IPGs, those disputes independently ████████ Comcast's two license agreements with Rovi and the transactions they contemplate.

For these reasons, as explained in greater detail below, Comcast is likely to succeed on the merits of its breach of contract and related declaratory judgment claims.

*Irreparable Harm*.  Comcast will be irreparably harmed as a matter of law absent an injunction because Rovi's breach deprives Comcast of its bargained-for forum.  In addition, Rovi's breach requires Comcast to litigate the same disputes on multiple fronts, including as part of a recently instituted ITC action.

*Balance of the Equities*.  The balance of equities favors Comcast because "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system."  *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 134 S. Ct. 568, 581 (2013) (quotation marks omitted).  Rovi will not be harmed by an injunction, given that a New York court can award Rovi the same relief that it can obtain through its ITC and Texas actions.

*Public Interest*.  The public interest further supports issuance of the injunction because of the strong public policy in favor of forum selection clauses.  *Id.*; *see M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *Brooke Grp. Ltd. v. JCH Syndicate 488*, 87 N.Y.2d 530, 534 (1996).

Accordingly, Comcast respectfully requests that this Court issue a preliminary injunction barring Rovi from continuing to prosecute its infringement actions in the Eastern District of Texas and the ITC, and ordering Rovi to take all steps necessary to secure the termination of those actions.

## BACKGROUND

Comcast's IPGs provide Comcast subscribers with listings and information and allow selective navigation and access to television programming and related functions and services. The IPGs are implemented using software run by Comcast's cable infrastructure and generally fall into two categories:  (1) Comcast's Legacy Guides (also referred to as "native guides"), which are implemented in software resident on certain of the STBs that Comcast has purchased from STB Suppliers and leased to its subscribers, and (2) Comcast's next-generation X1 IPG, which is implemented in software hosted by Comcast's computer servers in a network-based "cloud."  Declaration of Jon Radloff, dated May 25, 2016 ("Radloff Decl."), ¶ 8; Declaration of Ken Carpenter, dated May 25, 2016 ("Carpenter Decl."), ¶ 6.

Comcast and Rovi worked together for a number of years to develop and enhance IPGs. In March 2004, affiliates of Comcast and Rovi (then called Gemstar-TV Guide International, Inc.) formed a joint venture for the express purpose of owning and developing IPGs for use by Comcast, among others.  Declaration of Dana M. Seshens, dated May 26, 2016 ("Seshens Decl."), ███████████████████.  The joint venture, which became known as Guideworks,



. The parties agreed that, in the event that one party later purchased the other's interest in the venture, Rovi would grant Comcast a perpetual license to that software. ▮▮▮▮▮▮.  As part of their 2004 licensing arrangement, Comcast and Rovi ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

In 2010, Comcast purchased Rovi's interest in the Guideworks joint venture.  As anticipated, the 2010 agreements effecting that purchase contemplated ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Accordingly, the parties entered into the CLA under which Rovi granted Comcast a ***perpetual*** software license to, among other things, use, distribute, sublicense, ***and create derivative works of*** Rovi Software and any derivative works of that software that had been made by or on behalf of Guideworks as of the transaction date.  *Id.*, Ex. 4 (CLA) § 2.01.  The CLA defines Rovi Software to include software that (1) was provided by Rovi to Guideworks for inclusion in Guideworks Software, (2) was licensed to Guideworks in 2004, or (3) was set forth in Schedule A of that agreement.  *Id.* § 1.01.  Moreover, the CLA clarified that any native IPG of Guideworks—or any other native IPG that is primarily

based on any native IPG of Guideworks—created as of the transaction date is derived from Rovi Software and within the scope of the license. *Id.* §§ 1.01, 5.01.

At the same time as the CLA, Comcast and Rovi entered into the LDA, which granted Comcast an ████ license under Rovi's patent portfolio through March 31, 2016.  ████



The CLA and LDA were executed as part of the same series of transactions.  Both contain New York choice of law provisions, and both contain mandatory forum selection clauses requiring that disputes be adjudicated in New York.  The CLA contains a very broad provision that any "suit, action or proceeding . . . based on any matter arising out of or in connection with" the agreement or "the transactions contemplated hereby shall be brought" in New York.  *Id.*, Ex. 4 (CLA) § 12.09. ████

████ Both agreements also include jury waiver provisions ████

████.  *Id.*, Ex. 4 (CLA) § 12.10 (capitalization altered); ████.

The relevant licenses in both the CLA and the LDA extend to all of the Comcast plaintiffs, among others.[2]  And both the CLA and the LDA contain provisions relating to

---

[2] Comcast STB Software I, LLC ("Comcast STB") is the principal Comcast signatory to the CLA and the LDA.  The relevant license rights in each agreement are granted to Comcast STB and its "Affiliates," which include all entities directly or indirectly controlling, controlled by, or under common control (as "control" is defined for the purposes of those agreements) with

Comcast's STB suppliers.  For example, the CLA expressly permits Comcast to share the

licensed IPG software with its suppliers to be integrated for use on Comcast's platforms.[3]

███████████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████

On April 1, 2016—the day after the LDA expired—Rovi sued all of the Comcast

plaintiffs (except Comcast STB) and the STB Suppliers for patent infringement in two separate

lawsuits in the Eastern District of Texas.  Just a few days later, on April 6, 2016, Rovi

commenced a third action against those parties in the ITC.[4]  As summarized at the outset of its

ITC complaint, Rovi asserts that "[t]he Comcast IPG Products (alone and/or as implemented on

various digital receivers) infringe at least one claim of each of the Asserted Patents."  *Id.*, Ex. 6

(ITC Am. Compl.) ¶ 2.  Thus, notwithstanding the CLA's and the LDA's clear forum selection

---

Comcast STB.  Seshens Decl., Ex. 4 (CLA) at 1, § 2.01 (extending software license to "Affiliates" as defined in the parties' Master Agreement);

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████ All of the other Comcast plaintiffs either directly or indirectly "control," or are under common "control" with, Comcast STB.  Declaration of Derek Squire, dated May 25, 2016, ¶¶ 11-12.

[3] The CLA permits Comcast to "license, sell, disclose or otherwise distribute [the licensed software] to any third party" after a 30-month waiting period running from the date of the agreement.  Seshens Decl., Ex. 4 (CLA) § 5.01.  Even within that 30-month period—which has long since passed—Comcast was permitted to provide licensed software to third parties "in connection with the development, testing, integration, and/or support services performed by [those] third parties."  *Id.*

[4] Comcast of Houston, LLC is not a respondent in the ITC.  Rovi Corporation is a complainant in the ITC action but is not a named plaintiff in the Texas actions.

clauses, Rovi purports to assert claims for patent infringement in both Texas and the ITC.  It seeks injunctive relief and damages in those actions, including an injunction to prevent the STB Suppliers from importing STBs.  Moreover, although Rovi irrevocably waived its right to a jury trial in both the CLA and the LDA, it demands a jury trial in each of its federal court lawsuits.

Each of the causes of action asserted in Rovi's three actions alleges that STBs supporting only Comcast's Legacy Guides, which are licensed under the CLA, infringe Rovi's patents.  *See id.*, Ex. 6 (ITC Compl.) ¶ 54; *id.*, Ex. 7 (Rovi 321 Compl.) ¶¶ 40-41; *id.*, Ex. 8 (Rovi 322 Compl.) ¶¶ 38-39; Radloff Decl. ¶¶ 9-10.  And Rovi's complaints in Texas allege that "Comcast ignored Rovi's patent rights even during the period" the LDA was in effect, including by developing the platform on which Rovi alleges Comcast's X1 IPG was built.  Seshens Decl., Ex. 7 (Rovi 321 Compl.) ¶¶ 84-88; *id.*, Ex. 8 (Rovi 322 Compl.) ¶¶ 84-88.  None of Rovi's actions or causes of action is limited to conduct after March 31, 2016.

On May 23, 2016, Comcast commenced the above-captioned action seeking, among other relief, declaratory judgments that (1) Rovi breached the forum selection clauses in the CLA and LDA; (2) Rovi's claims are barred at least in part by the defenses of express license, implied license, and patent exhaustion and ███████████████████████████████████████;  and (3) Comcast does not infringe Rovi's asserted patents.[5]

---

[5] On May 20, 2016, one of the STB Suppliers filed a complaint in New York state court alleging that the Texas and ITC actions independently breach its contract with Rovi, including because they constitute a breach of that contract's forum selection clause, which also requires the actions to be pursued in New York.  *See* Compl., *Arris Grp. Inc. et al. v. Rovi Corp. et al.*, No. 652724/2016 (N.Y. Sup. Ct. May 20, 2016).

**ARGUMENT**

**ROVI SHOULD BE PRELIMINARILY ENJOINED FROM
PROSECUTING ITS PATENT ACTIONS IN OTHER FORUMS**

Because Comcast is seeking "an injunction against [Rovi's] participation in . . . district

court suit[s] for patent infringement and an ITC" action based on contractual forum selection

clauses, this motion is governed by the procedural law of the U.S. Court of Appeals for the Federal

Circuit.[6]  *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1359 (Fed. Cir. 2011); *see*

*also Ciena Corp. v. Nortel Networks Inc.*, 2005 WL 1189881, at *3 (E.D. Tex. May 19, 2005)

(applying Federal Circuit law to analyze motion to preliminarily enjoin patentee's prosecution of

infringement claims based on forum selection clause).  More generally, a district court in a patent

case "applies the law of the circuit in which it sits to nonpatent issues and the law of the Federal

Circuit to issues of substantive patent law."  *In re Omeprazole Patent Litig.*, 490 F. Supp. 2d

381, 399-400 (S.D.N.Y. 2007) (citation omitted), *aff'd*, 281 F. App'x 974 (Fed. Cir. 2008).

However, "[a]n issue that is not itself a substantive patent law issue is nonetheless governed by

Federal Circuit law if the issue pertains to patent law, if it bears an essential relationship to

matters committed to the exclusive control of the Federal Circuit by statute, or if it clearly

implicates the jurisprudential responsibilities of the Federal Circuit in a field within its exclusive

jurisdiction."  *Id.* (quotation marks and alterations omitted).  That is the case here.

---

[6] Any appeal from this motion will be heard by the Federal Circuit.  *See* 28 U.S.C.
§ 1295(a)(1) (granting the Federal Circuit "exclusive jurisdiction" of appeals "arising under . . .
any Act of Congress relating to patents"); *Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1367
(Fed. Cir. 2002) (reasoning that "a complaint seeking a declaration of noninfringement . . .
clearly arises under the patent laws"); *see also Tex. Instruments Inc. v. Tessera, Inc.*, 231 F.3d
1325, 1328 (Fed. Cir. 2000) (hearing appeal from denial of motion to enjoin litigation based on
forum selection clause).

Under Federal Circuit precedent, a movant is entitled to a preliminary injunction enforcing a contractual forum selection clause upon showing that:  (1) the movant is reasonably likely to succeed on the merits of its claim that litigation in other forums breached a forum selection clause, (2) the movant will suffer irreparable harm from continued prosecution of claims against it in forums other than the contractually agreed forum, (3) the balance of hardships weighs in the movant's favor, and (4) the public interest favors the movant.  *See, e.g.*, *Tex. Instruments*, 231 F.3d at 1328; *see also N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) (applying the same preliminary injunction standard).

As shown below, Comcast has satisfied all of the requirements for issuance of a preliminary injunction against Rovi to enforce the forum selection clauses in the CLA and LDA.

## I.   <u>Comcast Is Likely to Succeed on the Merits of Its Breach of Contract Claims</u>

There is a strong presumption in favor of forum selection clauses under both federal and New York law.  *See, e.g.*, *M/S Bremen*, 407 U.S. at 10 (holding that forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances"); *Sterling Nat'l Bank as Assignee of NorVergence, Inc. v. E. Shipping Worldwide, Inc.*, 35 A.D.3d 222, 222 (1st Dep't 2006) ("[I]t is the well-settled 'policy of the courts of this State to enforce contractual provisions for choice of law and selection of a forum for litigation.'" (citation omitted)); *Brooke Grp.*, 87 N.Y.2d at 534 ("Forum selection clauses are enforced because they provide certainty and predictability in the resolution of disputes . . . ." (citing *M/S Bremen*, 407 U.S. at 10)).

Under New York law, which governs the interpretation of the CLA and LDA, forum selection clauses are interpreted broadly.[7]  *See Freeford Ltd. v. Pendleton*, 53 A.D.3d 32, 36 (1st Dep't 2008) (applying forum selection clause to an action alleging fraud and breach of fiduciary duties); *Triple Z Postal Servs., Inc. v. United Parcel Serv., Inc.*, 13 Misc. 3d 1241(A), at *8 (N.Y. Sup. Ct. Nov. 24, 2006) (extending forum selection clause to tort claims where there would be no relationship between the parties but for their contractual relationship); *Montoya v. Cousins Chanos Casino, LLC*, 34 Misc. 3d 1211(A), at *4-6 (N.Y. Sup. Ct. Jan. 12, 2012) (extending forum selection clause to fraud, mismanagement, and self-dealing claims); *Devos Ltd. v. Rx Recalls, Inc.*, 12 Misc. 3d 1186(A), at *1-2 (N.Y. Sup. Ct. Dec. 2, 2005) (finding that forum selection clause providing for jurisdiction for "any legal action . . . with respect to" the agreement was "all-encompassing" and indicated "the parties' belief that all actions regarding their relationship will be governed by the forum selection clause"); *cf. Montoya*, 34 Misc. 3d 1211(A), at *5 ("Because of the strong public policy favoring enforcement of forum selection clauses, courts have construed these clauses broadly . . . .").

Given the text, scope, and breadth of the CLA's and LDA's forum selection clauses, Rovi's actions outside New York plainly breached them, and Comcast can show a likelihood of success on the merits of its breach of contract claims.

---

[7] Each of the CLA and LDA selects New York law to govern the interpretation of the forum selection clauses.  Seshens Decl., Ex. 4 (CLA) § 12.08 (providing that New York law governs the agreement); ███████████████; *Tex. Instruments*, 231 F.3d at 1329 (explaining that the interpretation of contracts is governed by state law); *Martinez v. Bloomberg LP*, 740 F.3d 211, 224 (2d Cir. 2014) (holding that "questions about the meaning and scope of a forum selection clause" are governed by the law the parties choose in their contract).

A.     Rovi's Infringement Actions Against Comcast
       "Arise" from or "in Connection with" the CLA

The CLA contains a broad and mandatory forum selection clause requiring any action

relating in any way to the CLA or any transactions it contemplates be brought in New York:

> The Parties agree that ***any suit, action or proceeding*** seeking to
> enforce any provision of, or ***based on any matter arising out of or
> in connection with***, ***this Agreement or the transactions
> contemplated hereby*** shall be brought in the United States District
> Court for New York or any New York State court sitting in New
> York County . . . .

Seshens Decl., Ex. 4 (CLA) § 12.09 (emphasis added).

Under New York law, this "broad and unequivocal" language should be construed

expansively.  *See Tourtellot v. Harza Architects, Eng'rs. & Constr. Managers*, 55 A.D.3d 1096,

1098 (3d Dep't 2008) (holding that forum selection clause covering "any dispute arising under or

in connection with their agreement" was "broad and unequivocal" such that its applicability

"does not turn on the nature of the dispute" between the parties); *see also Erie Ins. Co. of N.Y. v.

AE Design, Inc.*, 104 A.D.3d 1319, 1320 (4th Dep't 2013) (same holding as to forum selection

clause covering "[a]ny litigation arising in any way from [the] Agreement"); *Bernstein v. Wysoki*,

77 A.D.3d 241, 250 (2d Dep't 2010) (holding the "applicability of the forum selection clause

[did] not turn on the type or nature of the dispute between the parties" because, "by its express

language, [it] applie[d] to any dispute that may arise out of this agreement" (quotation marks

omitted)).  Because the CLA's forum selection clause expressly reaches claims "arising . . . in

connection with" the contract, it embraces "***all claims*** that have some possible relationship with

the contract."  *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 389 (2d Cir. 2007) (emphasis added).

Consistent with the expansive reading of forum selection clauses mandated by New York

law, the Federal Circuit applies a broad rule of construction to forum selection clauses in license

agreements in patent infringement cases.  Under this rule, such clauses encompass infringement

claims that are arguably barred by the license.  *See Tex. Instruments*, 231 F.3d at 1331 ("[T]he

governing law clause in the present case, as in any patent license agreement, necessarily covers

disputes concerning patent issues."); *accord Gen. Protecht*, 651 F.3d at 1359 (enforcing forum

selection clause where there was a "non-frivolous dispute regarding the scope of a patent

license" and whether the license supplied a defense to infringement claims); *see also Tessera,

Inc. v. Advanced Micro Devices, Inc.*, 2007 WL 3232441, at *5 (N.D. Cal. Nov. 1, 2007)

("Where there is a license agreement between a patent holder and an alleged infringer, *Texas

Instruments* holds that infringement disputes concerning products that are even arguably licensed

do 'arise from' the agreement as a matter of law.").

     In *Texas Instruments* and *General Protecht*, licensees invoked forum selection clauses in

licensing agreements as a basis to enjoin the prosecution of infringement claims outside the

agreed forum.  In enforcing a forum selection clause in *Texas Instruments*, the Federal Circuit

held that patent infringement disputes, including "actions" before the ITC, "arise from license

agreements."  *Tex. Instruments*, 231 F.3d at 1330-31.  Similarly, in enforcing a forum selection

clause as a basis to enjoin litigation outside the parties' selected forum in *General Protecht*, the

Federal Circuit held that disputes "arising from" license agreements include infringement claims

that entail "a non-frivolous dispute regarding the scope of a patent license"—in that case,

whether the license gave rise to an implied license defense.  *Gen. Protecht*, 651 F.3d at 1359.

     Here, the "action[s]" that Rovi has brought in Texas and the ITC "aris[e] out of or in

connection with" the CLA because the perpetual software license granted to Comcast under that

agreement gives rise to substantial (and plainly non-frivolous) defenses to the claims of

infringement that Rovi has asserted.  *See Tex. Instruments*, 231 F.3d at 1331; *Gen. Protecht*, 651 F.3d at 1359.

1.    **Rovi's "Actions" and Each Cause of Action**
      **Therein Accuse Comcast's Legacy Guides**

In its patent infringement actions in Texas, Rovi identifies as "Accused Products" 33 models of Comcast STBs that run ***only*** Comcast's Legacy Guides.  Seshens Decl., Ex. 8 (Rovi 322 Compl.) ¶¶ 38-39; *id.*, Ex. 7 (Rovi 321 Compl.) ¶¶ 40-41; *see* Radloff Decl. ¶¶ 9-10.  Each infringement cause of action identifies those types of STBs as accused, with the only distinction being whether or not an STB includes a digital video recorder (DVR), which is irrelevant for the purposes of this motion.  *Id.*, Ex. 8 (Rovi 322 Compl.) ¶¶ 38, 39, 154, 179, 206, 250, 292, 334, 373; *id.*, Ex. 7 (Rovi 321 Compl.) ¶¶ 40, 41, 149, 205, 248, 292, 344, 390, 437, 476.  In its ITC complaint, Rovi identifies the same 33 STBs, and their associated Legacy Guide software, as Accused Products.  *Id.*, Ex. 6 (ITC Compl.) ¶¶ 54-55.  Indeed, that complaint specifically identifies a Legacy Guide in an exemplary chart purporting to apply one of its patents to an accused STB and IPG.  *Id.* ¶ 166; *see also id.* at vii & Ex. 40.  It also makes clear that the software implementing the "Comcast Legacy" guide is the accused component of the accused STBs, alleging that such software has no substantial non-infringing uses.  *Id.* ¶¶ 127, 139, 151, 163, 175, 187, 199.

2.    **The CLA Supplies Defenses to Rovi's Patent**
      **Infringement Claims Accusing Comcast's Legacy Guides**

The license Rovi granted Comcast in the CLA gives rise to defenses that bar Rovi's patent infringement claims against Comcast's Legacy Guides.  While Comcast will prove on the merits that the CLA is a complete defense to those claims, Comcast need only establish for

14

purposes of this motion that the defenses are non-frivolous. *Gen. Protecht*, 651 F.3d at 1359; *see Tex. Instruments*, 231 F.3d at 1331. That is undoubtedly so.

In the CLA, Rovi expressly granted to Comcast the right to, among other things, use and make derivative works of any native IPG of Guideworks created prior to the date of the agreement. *See* Seshens Decl., Ex. 4 (CLA) §§ 1.01, 2.01, 5.01 (establishing that any native IPG of Guideworks is a derivative work of Rovi Software and therefore falls within the scope of the CLA's software license). Comcast's Legacy Guides are derivative works of a native IPG of Guideworks. *See* Radloff Decl. ¶¶ 12-21, 24-29; Carpenter Decl. ¶¶ 8-20, 21-28.

By licensing to Comcast a right to the Legacy Guides' software, the CLA provides Comcast an implied license to any Rovi patent implicated by that software. *See Wang Labs., Inc. v. Mitsubishi Elecs. Am. Inc.*, 103 F.3d 1571, 1580 (Fed. Cir. 1997) ("Any language used by the owner of the patent, or any conduct on his part exhibited to another from which that other may properly infer that the owner consents to his use of the patent . . . , constitutes a license and a defense to an action for a tort." (quotation marks omitted)). In other words, Rovi is legally estopped from derogating from the rights that it granted to Comcast in the CLA by pursuing patent infringement claims based on the very same software that it licensed. *See id.* at 1581; *see also ICOS Vision Sys. Corp. N.V. v. Scanner Techs. Corp.*, 2012 WL 512641, at *4, *7 (S.D.N.Y. Feb. 15, 2012) (explaining that the patentee's assertion of a patent would derogate rights as to which the parties had previously reached an agreement); *Jacobs v. Nintendo of Am., Inc.*, 2003 WL 25738602, at *3 (M.D. Fla. Jan. 31, 2003) (explaining that the plaintiff was "attempting to derogate" from his license with a nonparty by suing a customer of that nonparty for infringement), *aff'd*, 370 F.3d 1097 (Fed. Cir. 2004). Indeed, Comcast's software license would be no license at all if Rovi's patent claims against that software were permitted.

15

In addition, Rovi's grant of the software license in exchange for valuable consideration from Comcast, *see* Seshens Decl., Ex. 4 (CLA) at 1, bars Rovi's claims that the Legacy Guides infringe its patents under the independent doctrine of patent exhaustion. *See Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 638 (2008) (holding that "[t]he authorized sale of an article that substantially embodies a patent exhausts the patent holder's rights and prevents the patent holder from invoking patent law to control postsale use of the article" because the patent holder licensed the licensee "to practice any of its patents and to sell products practicing those patents"); *Keurig, Inc. v. Sturm Foods, Inc.*, 732 F.3d 1370, 1375 (Fed. Cir. 2013) (explaining that the "purpose of the patent law is fulfilled . . . when the patentee has received his reward" for the use of an article and that permitting a plaintiff "to recover multiple times" on its patented items would run counter to that purpose (citation omitted)).   In accusing the Legacy Guides of infringement, Rovi has in substance alleged that the asserted patent claims are substantially (if not entirely) embodied in the very software that Rovi licensed to Comcast under the CLA.  *See, e.g.*, *LG Elecs., Inc. v. Hitachi, Ltd.*, 655 F. Supp. 2d 1036, 1044, 1047-48 (N.D. Cal. 2009) (relying on patentee's infringement contentions to resolve substantial embodiment issue and finding that license grant "constitutes a sale" for exhaustion purposes).

Because Comcast has non-frivolous defenses under the CLA in the "action[s]" brought by Rovi, those actions and proceedings are "based on any matter arising out of or in connection with, [the CLA] or the transactions contemplated" thereby.  Seshens Decl., Ex. 4 (CLA) § 12.09; *see Tex. Instruments*, 231 F.3d at 1331; *Gen. Protecht*, 651 F.3d at 1359; *Tessera, Inc.*, 2007 WL 3232441, at *5.  Under the "broad and unequivocal" language of the CLA's forum selection clause, that clause's "applicability . . . does not turn on the type or nature of the dispute," *Tourtellot*, 55 A.D.3d at 1098, but rather embraces "***all claims*** that have some possible

16

relationship with the contract," *Phillips*, 494 F.3d at 389 (emphasis added); *accord Bernstein*, 77 A.D.3d at 250.  Accordingly, Comcast is likely to prevail on its claim that Rovi breached the CLA by bringing its patent infringement actions against Comcast in Texas and the ITC and not in New York.

### B.   Rovi's Infringement Claims Against the STB Suppliers Also "Arise" from or "in Connection with" the CLA

As shown above, the CLA's forum selection clause applies, by its express terms, to the Texas and ITC "action[s]."  Nothing in the clause carves out from its broad sweep the claims asserted against the STB Suppliers in those "action[s]."  Indeed, permitting Rovi to pursue claims disruptive to Comcast against Comcast's suppliers outside New York would undermine the broad forum selection protections for which Comcast successfully bargained.  Because the plain meaning of the text of that clause unambiguously embraces the entirety of the Texas and ITC actions, Rovi should be enjoined from prosecuting its claims against the STB Suppliers in those jurisdictions as well.[8]

Rovi's claims against the STB Suppliers also independently fall under the CLA's forum selection clause because they are "based on . . . matters arising out of or in connection with" the CLA or transactions contemplated therein.  As noted, Rovi's infringement claims are directed principally against features of Comcast's IPGs, including the Legacy Guide that implicates the CLA software license.  *See, e.g.*, Seshens Decl., Ex. 6 (ITC Compl.) ¶¶ 2-3; *see supra* Section I.A.1.  In its three actions, Rovi alleges that the STB Suppliers infringed Rovi's patents through their provision of STBs to Comcast for use by or with Comcast's services.  *See, e.g.*, Seshens

---

[8] For similar reasons, any claim by Rovi based on its post-March 31, 2016 assertions against Comcast's X1 IPG and STBs must also be pursued in New York.  Those claims are part of the same "action[s]" as Rovi's claims based on assertions against Comcast's Legacy Guides.

Decl., Ex. 7 (Rovi 321 Compl.) ¶ 6; *id.*, Ex. 8 (Rovi 322 Compl.) ¶ 6; *id.*, Ex. 6 (ITC

Compl.) ¶ 5.  However, Comcast sought to protect its supply chain in the CLA, which expressly

permits Comcast to provide the licensed (and now accused) software to its suppliers so that it

may be integrated for use on Comcast's platforms.  *Id.*, Ex. 4 (CLA) § 5.01(b)(i).  As a result,

because Comcast's right to provide the licensed software to its suppliers for integration falls

within the software license, Rovi's claims against the STB Suppliers necessarily arise "in

connection with" Comcast's exercise of that contractual right and in connection with transactions

"contemplated" in the CLA.

That Rovi's claims against the STB Suppliers would fall under the CLA's forum

selection clause should come as no surprise to Rovi.  The STB Suppliers are sufficiently close to

Comcast under the CLA that it was foreseeable that Rovi's claims against them would fall within

the scope of the CLA's forum selection clause as well.  *See Freeford*, 53 A.D.3d at 40 (applying

forum selection clause to non-signatory where the nonparty and signatory were sufficiently close

that nonparty's enforcement was foreseeable); *Dogmoch Int'l Corp. v. Dresdner Bank AG*, 304

A.D.2d 396, 397 (1st Dep't 2003) (applying forum selection clause to nonsignatory); *see also In

re Optimal U.S. Litig.*, 813 F. Supp. 2d 383, 387-88 (S.D.N.Y. 2011) ("It is well established that

a range of transaction participants, parties and non-parties, should . . . be subject to forum

selection clauses."); *Bluefire Wireless, Inc. v. Cloud9 Mobile Commc'ns, Ltd.*, 2009 WL

4907060, at *2 n.4 (S.D.N.Y. Dec. 21, 2009) (concluding that forum selection clause applied to

non-signatories where the plaintiff based their alleged liability on the conduct of the signatory).

**C.      Rovi's Infringement Claims Against Comcast and
the STB Suppliers ████████████ the LDA**

In addition to asserting that Comcast's Legacy Guides infringe each of its patents, Rovi

accuses Comcast's X1 IPG of infringement and does so in part by reference to activities

conducted before March 31, 2016.  *See, e.g.*, Seshens Decl., Ex. 7 (Rovi 321 Compl.) ¶¶ 84-88.

However, the LDA granted an express patent license to Comcast, ██████████████████

████████████████████████████████████████████████████████████████

██ .

Like the CLA, the LDA contains a mandatory forum selection clause that requires litigation

be brought in New York:

████████████████████████████████████████████

████████████████████████

████████████████ .  Rovi's actions alleging pre-March 31, 2016 infringement breach this

clause for at least two reasons.

First, as discussed above, "[p]atent infringement disputes . . . arise from license

agreements."  *Tex. Instruments*, 231 F.3d at 1331; *Gen. Protecht*, 651 F.3d at 1359.  Because the

LDA granted to Comcast and its affiliates a right and license under Rovi's patents until March

31, 2016, it provides a complete defense to Rovi's claims to the extent they are based on conduct

prior to that time. ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ Consequently, ██████████████████████

██████ under the clear precedent of *Texas Instruments* and *General Protecht*.  *See Tessera, Inc.*,

2007 WL 3232441, at *5.

Second, Rovi itself invokes the LDA as a basis for its claims.  In particular, Rovi alleges that Comcast exceeded the scope of the LDA by improperly developing its X1 IPG prior to the expiration of the LDA on March 31, 2016.  Indeed, in a section of its complaints titled "Comcast Ignored Rovi's Patent Rights Even During the Period Comcast Has Been A Rovi Licensee," Rovi alleges "on information and belief" that Comcast licensed or sold its X1 guides to other cable companies and that "Comcast's License did not include the right" for Comcast to do so. *See, e.g.*, Seshens Decl., Ex. 7 (Rovi 321 Compl.) ¶¶ 84-85.  In that section, Rovi also directs numerous allegations to Comcast's development prior to March 31, 2016 of the platform upon which Rovi asserts the X1 IPG is built.  *See, e.g.*, *id.*, Ex. 8 (Rovi 322 Compl.) ¶¶ 87-88. Because these claims are predicated on pre-March 31, 2016 conduct that purportedly exceeds the scope of the LDA, they ████████ that agreement and thus fall within its forum selection clause.[9]  *Montoya*, 34 Misc. 3d 1211(A), at *5 (holding that various tort causes of action ████ ████ contract because they grew "out of the contractual relationship between the parties and require[d] interpretation of the contract for resolution").

That Rovi has alleged solely patent infringement claims does not alter this conclusion. *See, e.g.*, *HMS Holdings Corp. v. Moiseenko*, 49 Misc. 3d 1215(A), at *4 (N.Y. Sup. Ct. Nov. 13, 2015) (rejecting plaintiff's attempt to "avoid the consequences of the forum selection clause" by artfully forgoing "the assertion of contract claims"); *see also, e.g.*, *Cuno v. Hayward Indus. Prods., Inc.*, 2005 WL 1123877, at *4 (S.D.N.Y. May 10, 2005) (reasoning that a "forum

---

[9]  Although certain courts have held that claims do not ████████ a contract when the contract is relevant only as a defense, *see, e.g.*, *Phillips*, 494 F.3d at 391; *Corcovado Music Corp. v. Hollis Music, Inc.*, 981 F.2d 679, 681-83 (2d Cir. 1993), those cases were decided outside of the patent context and without regard to New York law.  They further do not apply to the instant case because, as discussed, Rovi itself claims that Comcast's actions exceeded the scope of the LDA.

selection clause should not be defeated by artful pleading of claims not based on the contract . . .

if those claims grow out of the contractual relationship, or if 'the gist' of those claims is a breach

of that relationship" (quotation marks omitted)); *Weingrad v. Telepathy, Inc.*, 2005 WL 2990645,

at *4 (S.D.N.Y. Nov. 7, 2005) (applying forum selection clause to tort claims where plaintiff's

claims "relie[d] necessarily on [the contract] as the source of . . . [the plaintiff's alleged]

right[s]").  Accordingly, Comcast is likely to succeed on the merits of its claim that Rovi

breached the LDA's forum selection clause by suing Comcast on those claims outside New

York.

## II.      **Comcast Will Be Irreparably Harmed Absent a Preliminary Injunction**

Absent a preliminary injunction enjoining Rovi's prosecution of actions against Comcast

and the STB Suppliers in the Eastern District of Texas and the ITC, Comcast will be deprived of

its bargained-for forum.  That alone demonstrates irreparable harm.  *See Ciena*, 2005 WL

1189881, at *7 (finding irreparable harm because the absence of an injunction would deprive a

party of its "bargained-for forum").

Moreover, if Rovi is not enjoined from prosecuting its actions in other forums, then

Comcast will be forced to engage in burdensome, duplicative, and fast-paced litigation on

multiple fronts, causing it to suffer the "inconvenience, disruption of its business, loss of good

will, and financial business hardship from the duplicative actions."  *Id.*; *see also Gen. Protecht*

*Grp., Inc. v. Leviton Mfg. Co.*, 2010 WL 5559750, at *26 (D.N.M. Nov. 30, 2010) (recognizing

that, "[e]ven if . . . attorneys' fees and costs are eventually recoverable in damages, the

inconvenience and [business] disruption" of litigating simultaneously in the ITC and federal

court "is irreparable" (quoting *Tex. Instruments, Inc. v. Tessera, Inc.*, No. C-00-2114 CW, slip.

op. at 6 (N.D. Cal. Mar. 6, 2001))), *aff'd* 651 F.3d 1355 (Fed. Cir. 2011); *Babcock & Wilcox Co.*

*v. Control Components, Inc.*, 161 Misc. 2d 636, 646 (N.Y. Sup. Ct. 1993) (finding irreparable harm where a party would be "forced to engage in duplicative litigation and unnecessary expense"); *cf. Am. Tel. & Tel. Co. v. Milgo Elec. Corp.*, 416 F. Supp. 951, 953 (S.D.N.Y. 1976) ("[T]he simultaneous maintenance of two proceedings is an unnecessary duplication of judicial and agency effort, not to mention expensive and time-consuming for the litigants.").  Indeed, Comcast has already been forced to devote additional resources because of the multiplicity of actions, and it will experience significant further disruption if those prohibited actions proceed. Declaration of David Marcus, dated May 25, 2016, ¶¶ 4-7.

These harms to Comcast will be particularly onerous given the burdensome expedited discovery, trial, and review schedule attendant to an ITC action, which was formally instituted only a few days ago.  *See, e.g.*, *Avago Techs. U.S. Inc. v. IPtronics, Inc.*, 2013 WL 623042, at *3 (N.D. Cal. Feb. 15, 2013) (recognizing the "aggressive pace and demands" of an ITC action); *see also* Mark Whitaker & Lauren Emerson, *Litigation Before the International Trade Commission: A Powerful Option for Brand Owners, When the Shoe Fits*, 27 Intell. Prop. & Tech. L.J. 3, 4-5 (2015) (describing the "pace of an ITC proceeding" as "fast and relentless"); John C. Evans, Note, *Addressing Default Trends in Patent-Based Section 337 Proceedings in the United States International Trade Commission*, 106 Mich. L. Rev. 745, 754 (2008) (explaining that responding to an ITC action "can be more challenging than defending a patent infringement claim in federal court" because respondents "have little time to develop their defenses" and face "crushing deadlines").  Given the nature and scope of ITC actions, it has fallen to courts such as this one to

enforce forum selection clauses breached by the filing of an action before the ITC.[10]  *See Gen.*

*Protecht*, 651 F.3d at 1363-66; *Tessera, Inc.*, 2007 WL 3232441, at *6.

## III.     The Balance of Equities Favors Comcast

The equities favor Comcast because "[e]nforcement of valid forum selection clauses,

bargained for by the parties, protects their legitimate expectations and furthers vital interests of

the justice system." *Atl. Marine*, 134 S. Ct. at 581 (quotation marks omitted); *see also Mercury*

*W. A.G., Inc. v. R.J. Reynolds Tobacco Co.*, 2004 WL 421793, at *3 (S.D.N.Y. Mar. 5, 2004)

("[F]orum selection clauses carry an economic benefit to at least one of the parties that is

typically reflected in the overall economics of the contract.").

By comparison, Rovi will not be harmed by a preliminary injunction because a New

York court can award it the same relief that it can obtain through its ITC and Texas actions.  *See*

*Ciena*, 2005 WL 1189881, at *8 ("The injunction will not work a material hardship to Ciena, as,

for all practical purposes, this Court can grant Ciena any relief it could have obtained in the

ITC." (citing *Tex. Instruments*, 231 F.3d at 1330)).

## IV.     The Public Interest Favors Issuance of a Preliminary Injunction

As set forth above, there is a strong public policy in favor of enforcing valid forum

selection clauses.  *See M/S Bremen*, 407 U.S. at 10 (holding that forum selection clauses are

"prima facie valid and should be enforced unless enforcement is shown by the resisting party to

be 'unreasonable' under the circumstances"); *Atl. Marine*, 134 S. Ct. at 582 (same); *Brooke Grp.*,

87 N.Y.2d at 534 (same).  The forum selection clauses in this case are valid and choose New

York courts exclusively for the disputes raised by Rovi's complaints.  The public interest

---

[10] In parallel with this motion, Comcast is moving to transfer the Texas actions to New York based on the forum selection clauses in the CLA and LDA.

therefore is served by enjoining Rovi's attempts to flout the CLA's and the LDA's bargained-for forum provisions.

## CONCLUSION

For the foregoing reasons, Comcast respectfully requests that the Court issue a preliminary injunction enjoining Rovi's prosecution of the Texas and ITC actions in their entirety, and ordering Rovi to take all steps necessary to secure their termination.

Dated: New York, New York
May 27, 2016

Respectfully submitted,

DAVIS POLK & WARDWELL LLP

/s/ Dana M. Seshens
Dana M. Seshens
David B. Toscano

450 Lexington Avenue
New York, New York 10017
Tel.:  (212) 450-4000
Fax:  (212) 701-5800
dana.seshens@davispolk.com
david.toscano@davispolk.com

– and –

Matthew B. Lehr
Anthony I. Fenwick*
David J. Lisson*
Gareth E. DeWalt*
Micah G. Block*

1600 El Camino Real
Menlo Park, California 94025
Tel.:  (650) 752-2000
Fax:  (650) 752-2111
matthew.lehr@davispolk.com
anthony.fenwick@davispolk.com
david.lisson@davispolk.com
gareth.dewalt@davispolk.com
micah.block@davispolk.com

*pro hac vice applications forthcoming

*Attorneys for Plaintiffs Comcast
Corporation; Comcast Cable
Communications, LLC; Comcast Cable
Communications Management, LLC;
Comcast of Houston, LLC; Comcast
Business Communications, LLC; Comcast
Holdings Corporation; Comcast Shared
Services, LLC; and Comcast STB Software
I, LLC*