UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMCAST CORPORATION; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC; COMCAST OF HOUSTON, LLC; COMCAST BUSINESS COMMUNICATIONS, LLC; COMCAST HOLDINGS CORPORATION; COMCAST SHARED SERVICES, LLC; and COMCAST STB SOFTWARE I, LLC,<br><br>                              Plaintiffs,<br><br>        v.<br><br>ROVI CORPORATION; ROVI GUIDES, INC.; ROVI TECHNOLOGIES CORP.; and VEVEO, INC.<br>                     Defendants. | Civil Action No. 16-cv-03852-JPO |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 2

III.    THE TEXAS COURT SHOULD ADDRESS COMCAST'S FORUM SELECTION
ARGUMENTS BEFORE THIS COURT REACHES THE MERITS OF COMCAST'S
REQUEST FOR A PRELIMINARY INJUNCTION ................................................... 8

IV.    COMCAST'S REQUEST FOR A PRELIMINARY INJUNCTION FAILS ON THE MERITS
AND SHOULD BE DENIED .................................................................................. 9

    A.    Comcast Is Unlikely To Succeed On The Merits: The Venue
Provisions In The Patent License And Software License Do Not
Apply To The ITC Action And The Texas Cases ..................................... 9

        1.    The Forum Selection Clause In The Expired Patent License
Does Not Bar Any Of Rovi's Infringement Claims At The
ITC Or In Texas. ........................................................................ 10

        2.    The Forum Selection Clause In The Software License Does
Not Bar Any Of Rovi's Patent Infringement Claims At The
ITC Or In Texas. ........................................................................ 13

            a.    *The Forum Selection Clause In The
Software License Does Not Bar Any Of
Rovi's Patent Infringement Claims In Texas
Or The ITC Because It Does Not Grant Any
Patent Rights.* ................................................................ 13

            b.    *The Forum Selection Clause In The
Software License Also Does Not Bar Any Of
Rovi's Claims In The ITC Action Because
New York Courts Have No Subject Matter
Jurisdiction Over ITC Claims.* ....................................... 14

            c.    *The Forum Selection Clause Of The
Software License Also Does Not Bar Rovi's
Infringement Claims As To Comcast's X1
(Non-Legacy) Products.* ................................................. 15

            d.    *The Forum Selection Clause Of The
Software License Also Does Not Bar Rovi's
Infringement Claims As To Comcast's
Legacy Products In The ITC Or Texas.* .......................... 16

e.  *The Forum Selection Clause Of The Software License Also Does Not Bar Any Of Rovi's Claims Against The Other Defendants In The ITC And The Texas Cases.* ............................................................................21

B.  Comcast Will Not Suffer Irreparable Harm In The Absence Of Preliminary Relief: It Instigated A Duplicative Suit In This Court And Its Alleged Harm Is Not Irreparable. ...........................................22

1.  Comcast Instigated A Duplicative Suit In This Court By Seeking Declaratory Relief On The Fifteen Patents Already At Issue In The ITC And Texas. .............................................22

2.  Injunctive Relief Is Not Available To a Claimant That Creates The Harm About Which It Seeks Protective Relief. .....................23

3.  Comcast's Alleged Harm Is Not Irreparable Because It Is Compensable Monetarily. .........................................................24

C.  Comcast Failed To Establish The Remaining Preliminary Injunction Factors. ..................................................................24

V.  CONCLUSION ................................................................................25

## I.    INTRODUCTION

Comcast's preliminary injunction motion should be denied. It is procedurally improper and substantively meritless.

The Eastern District of Texas—the first filed forum—should decide this issue. Litigants should not burden multiple courts with consideration of identical issues. Appellate court precedent, including directives from the United States Supreme Court, advises this Court to defer to the first filed forum to determine where Rovi's patent infringement claims should be tried. Denial of Comcast's motion is wholly appropriate on that procedural ground alone.

If the Court reaches the merits of Comcast's motion, it should be denied. Comcast seeks to bar Rovi's ITC action and Rovi's Texas cases in reliance on venue provisions in two agreements: an expired Patent License (what Comcast calls the "LDA") and a Software License (what Comcast calls the "CLA"). Neither venue provision in either agreement applies to any claim that Rovi asserts in either the ITC or in Texas.

The venue provision of the Patent License does not apply because Rovi's patent infringement claims "arise from" statute, rather than contract. Moreover, the Patent License has expired and Rovi's patent infringement claims at the ITC and in Texas are limited to Comcast's post-Patent License expiration acts of infringement.

The venue provision of the Software License similarly does not apply for several reasons: It cannot apply to any ITC action because, as it expressly states, it applies to only those actions over which New York courts have subject matter jurisdiction. No New York court (including this Court) has subject matter jurisdiction over unfair importation actions; such actions are vested by federal statute solely in the ITC under 19 U.S.C. § 1337.

Neither can the venue provision of the Software License apply to the two patent infringement cases now pending in Texas. Comcast's only argument here is that a perpetual

1

***implied patent license*** is conveyed by the Software License, which defines "Software" by referencing ***copyrights but not patents.*** This argument is wrong as a matter of law for three independent reasons. First, the parties expressly agreed in § 2.03 of the Software License that the agreement created no implied license of any Rovi patent rights in the licensed software: "All rights in (a) the Rovi software . . . in each case to the extent not expressly granted herein, are hereby expressly reserved by RoviGuides and its Affiliates." Second, when contracting parties agree to an express license—as Rovi and Comcast did in the Patent License—as a matter of law, there can be no implied license governing that same subject matter. Third, Comcast ignores binding authority that the mere right to use software does not convey a patent license.

Putting aside Comcast's unlikelihood of success on the merits, its claimed harm is not irreparable and is wholly self-inflicted. Duplicative litigation and the increased burdens resulting therefrom is entirely of Comcast's own making. Months after Rovi first filed its cases in Texas and in the ITC, Comcast chose to file a duplicative suit in this Court, placing the same fifteen patents already at issue in Texas and the ITC at issue here. Not only are additional litigation costs compensable monetarily and therefore, not irreparable injury justifying injunctive relief, a party may not complain and seek an injunction to avoid harm that it creates.

Finally, Comcast's motion conspicuously avoids addressing the remaining preliminary injunction factors which, if considered, do not support its request for injunctive relief.

For all of these reasons, Comcast's motion should be denied.

## II.   BACKGROUND

Rovi[1] is and has been a pioneer and recognized leader in media technology, particularly in the fields of on-screen interactive programming guides ("IPGs"), set-top boxes ("STBs"), and

---

[1] As referenced herein, the term "Rovi" includes Rovi Corporation and all of its prior and current subsidiaries, including Gemstar-TV Guide International, Inc.

related products, services, and solutions. Rovi products provide personalized and data-driven means for viewers to discover the right entertainment and for providers to discover the right audiences. As a result of Rovi's significant investments in research and development in these fields, as well as its strategic acquisitions, Rovi now owns a portfolio of over 1,200 issued U.S. patents and 500 pending U.S. patent applications, including the Patents-in-Suit. Recognizing the importance and significance of the inventions claimed in Rovi's patents, every major U.S. Pay-TV provider—including Comcast—and almost every major U.S. set-top box manufacturer has taken a license to Rovi's patent portfolio.

A.    **The 2004 Agreements: The Rovi And Comcast Joint Venture "Guideworks."**

In the early 2000s, Comcast came to Rovi out of necessity—Comcast needed Rovi's advanced programming guide technology to compete with other cable and satellite service providers. Rovi provided Comcast with access to advanced services via its state of the art i-Guide software and other products, which allowed users to watch and record programs simultaneously, greatly enhancing their television viewing experience (a novelty at this time). The President of Comcast Cable recognized that working with Rovi gave Comcast "greater control of the platform customers use to enjoy cutting-edge services available now, such as video on demand (VOD) and digital video recorders." *See* Ex. 1.

In 2004, the parties executed a series of agreements that (i) gave Comcast a limited-term license to Rovi's patent portfolio, and (ii) created a joint venture (eventually named "Guideworks") to which Rovi licensed certain software for development and distribution to Comcast. *See id.* The patent rights and software rights were set forth in separate agreements.

**B.**   <u>The 2010 Agreements</u>**: The Guideworks Joint Venture Is Terminated.**

In 2010, Rovi and Comcast entered into another series of agreements, terminating the

Guideworks joint venture, amending Comcast's license to Rovi's patent portfolio, and granting

Comcast a software license to certain software that had been delivered to Guideworks. Like the

2004 agreements, the 2010 agreements were designed to achieve two separate goals: (i) grant

Comcast certain rights to Rovi's patents for a defined term; *and separately* (ii) grant Comcast

certain rights to certain software used in the joint venture. And, like the 2004 agreements, the

2010 agreements were negotiated contemporaneously and included the patent license and

software license in two separate documents: an Amended and Restated License and Distribution

Agreement ("Patent License," what Comcast calls the "LDA") of defined term, and a Cross

License Agreement ("Software License," what Comcast calls the "CDA"). A Master Agreement

governed both, and together, the 2010 Agreements "supersede[d] all other agreements." *See* Dkt.

28-3 (Master Agreement) § 8.11; Dkt. 28-5 (Patent License) § 32; Dkt. 28-4 (Software License)

§ 12.12.

The Software License granted certain rights to use, reproduce, and create derivative

works of Rovi Software:

> *Rovi Software License.* Subject to the other terms hereof (including
> Section 5.01), RoviGuides, on behalf of itself and its Affiliates, hereby
> grants to Comcast and its Affiliates an irrevocable, perpetual, worldwide,
> royalty-free, fully paid-up, freely transferable, freely sublicensable,
> nonexclusive license to reproduce, create derivative works of, distribute
> (including through multiple tiers), use, perform, display and sublicense (a)
> the Rovi Software and (b) to the extent RoviGuides has such rights to
> grant, any such derivative works made by or on behalf of Guideworks
> prior to or as of the Effective Date, in each case in object code and/or
> source code form . . . .

4

Dkt. 28-4 § 2.01. The Software License granted no patent rights, which were governed by the separate, but contemporaneously negotiated Patent License.[2]

Notably, the Patent License and the Software License contain distinct forum selection clauses. The Patent License forum selection clause is narrow and states, in relevant part: "[t]he parties hereby agree and consent to the exclusive jurisdiction and venue of the states and/or federal courts situated in New York, New York, for any dispute *arising from* this AGREEMENT." Dkt. 28-5 § 23 (emphasis added). The Software License forum selection clause, in contrast, is broader, and provides:

> The Parties agree that any suit, action or proceeding seeking to enforce any provision of, *or based on any matter arising out of or in connection with*, this Agreement or the transactions contemplated hereby shall be brought in the United States District Court for New York or any New York State court sitting in New York County, so long as one of such courts shall have subject matter jurisdiction over such suit, . . . .

Dkt. 28-4 § 12.09 (emphasis added).

The Patent License expired on March 31, 2016, whereas the Software License is perpetual. Compare Dkt. 28-5 § 17 *with* Dkt. 28-4 § 2.01. And because the Patent License expired, and the Software License grants no patent rights, Comcast has no right to use any of Rovi's patents after expiration of the Patent License.

### C.   Procedural Background: Comcast Refused To Renew The Patent License On Acceptable Terms And Litigation Ensued.

After months of fruitless negotiations, Comcast refused to renew the Patent License on acceptable terms. As a result, on April 1, 2016, following the expiration of the Patent License, Rovi filed suit to enforce its patent rights. Rovi brought infringement claims against Comcast

---

[2] Comcast now contends that its "Legacy Products" are "derivative works" under the Software License. Dkt. 27 at 15. Comcast, however, makes no such claim as to its newest products, the X1 (or "Non-Legacy Products"), which were independently developed by Comcast, separate and apart from Guideworks. Dkt. 27 at 4. It is undisputed that the Software License is irrelevant to X1, including all of Comcast's Non-Legacy Products.

(and other defendants) in two actions in the Eastern District of Texas, and in one suit at the International Trade Commission (ITC): *Rovi v. Comcast*, No. 2:16-cv-00321-JRG-RSP (E.D. Tex. Apr. 1, 2016) ("-321 Case"); *Rovi v. Comcast*, No. 2:16-cv-00322-JRG-RSP (E.D. Tex. Apr. 1, 2016); *In the Matter of Certain Digital Video Receivers and Hardware and Software Components Thereof*, Inv. No. 337-TA-1001 (ITC Apr. 6, 2016).

The Comcast products accused of infringement in Rovi's pending Texas and ITC actions generally fall into two categories: (1) X1 (Or Non-Legacy Products); and (2) what Comcast has termed its "Legacy Products." Comcast's Legacy Products are IPGs that Comcast contends were derived from software developed by Guideworks, which according to Comcast in turn evolved from or were derivative works of the Rovi i-Guide software Rovi contributed to the Guideworks joint venture. Comcast's X1 (including any Non-Legacy Products) are IPGs that were independently developed by Comcast, separate from Guideworks, and are not alleged by Comcast to be derivative of any Guidework product or to implicate the Software License. However, and contrary to Comcast's assertions, the Legacy Products are accused of infringing only some of the Rovi Patents-in-Suit. On June 16, 2016, Rovi served infringement contentions in the -321 Case in Texas. For four of the eight patents asserted (U.S. Patent Nos. 9,172,987; 7,895,218; 8,122,034; and 8,433,696), Rovi accuses only X1 products, not Legacy Products. *See* Ex. 2; Ex. 3, Ex. 4; Ex. 5. For the other four patents (U.S. Patent Nos. 8,713,595; 8,755,666; 7,996,864; and 6,725,281) Rovi accuses both Comcast's X1 and Legacy Products of infringement.[3] *See* Ex. 6; Ex. 7; Ex. 8; Ex. 9.

---

[3] Rovi has not served infringement contentions in the -322 Texas case because that case has been stayed pursuant to 28 U.S.C. § 1659(a) as requested by Comcast (and the other defendants). *See Rovi v. Comcast*, No. 2:16-cv-00322-JRG-RSP, Dkt. Nos. 101, 104, 105.

As set forth in its Texas complaints, Rovi seeks *prospective* relief for Comcast's patent infringement that occurred after the expiration of the Patent License—*i.e.,* those acts "without authority or license." *See* Dkt. 28-7 ¶¶ 149, 205, 248, 292, 344, 390, 437, and 476; Dkt. 28-8 ¶¶ 154, 179, 206, 250, 292, 334, and 373. In view of Comcast's misreading of Rovi's complaints, Rovi has reiterated by letter that it is not making a claim for damages for any infringing conduct that pre-dates expiration of the Patent License. Ex. 10.

On May 23, 2016, Comcast filed this duplicative action[4] against Rovi, alleging non-infringement of the fifteen patents already asserted in both actions in Texas, and "claims" for express license, implied license and exhaustion,[5] as well as for breach of contract resulting from Rovi's alleged violations of the forum selection clauses in the Patent License and Software License. Dkt. 1. On May 27, 2016, Comcast then moved for a preliminary injunction, demanding that this Court enjoin Rovi from prosecuting its patent infringement claims in Texas and the ITC. Dkt. 27. On the same day, Comcast filed Motions to Change Venue in the Texas cases and asked the Texas court to consider the identical issues on the same grounds asserted here—alleging that Rovi violated the forum selection clauses in the Patent License and Software License. *Rovi v. Comcast*, No. 2:16-cv-00321-JRG-RSP, ECF No. 78; No. 2:16-cv-00322-JRG-RSP, ECF No. 67. On June 3, 2016, Comcast filed its answer and counterclaims in Texas, asserting the same defenses of non-infringement, exhaustion, and implied license that it is asserting here as

---

[4] Comcast brought this action after another defendant, ARRIS Group Inc. and ARRIS International PLC (jointly, "ARRIS"), filed a similar action in New York state court, alleging that Rovi breached the forum selection clause in Rovi's license with ARRIS by bringing patent infringement claims in the Eastern District of Texas and the ITC. *Arris Grp. v. Rovi Corp.*, No. 652724/16 (N.Y. Sup. Ct. May 20, 2016). ARRIS moved for a temporary restraining order demanding that Rovi be enjoined from proceeding with its Texas and ITC actions. *Id.* (May 24, 2016). The court denied ARRIS' motion for temporary restraining order, and ARRIS has since withdrawn its motion for an injunction. *See* Ex. 11.

[5] As explained in Rovi's Motion to Dismiss, these "claims" are really non-actionable defenses which should be dismissed. Dkt. 50 at 12-13.

purported "claims." *Rovi v. Comcast*, No. 2:16-cv-00321-JRG-RSP, ECF No. 91; No. 2:16-cv-00322-JRG-RSP, ECF No. 80.

### III.  THE TEXAS COURT SHOULD ADDRESS COMCAST'S FORUM SELECTION ARGUMENTS BEFORE THIS COURT REACHES THE MERITS OF COMCAST'S REQUEST FOR A PRELIMINARY INJUNCTION

As a threshold matter, this Court should not reach the merits of Comcast's Motion for Preliminary Injunction because Comcast seeks relief in the wrong forum. It is the first filed forum for these claims—the Texas court—that should determine whether the forum selection clauses apply to Rovi's claims and where those claims should be litigated. This district adheres to the strict rule that where the same or similar claims are pending in two forums, it is the first filed action that should decide where the claims should be litigated. *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 54 n.2 (S.D.N.Y. 2001); *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 557 (S.D.N.Y. 2000); *see also Silver Line Bldg. Prods. LLC v. J-Channel Indus. Corp.*, 12 F. Supp. 3d 320, 328-29 (E.D.N.Y. 2014); *EMC Corp. v. Parallel Iron, LLC*, 914 F. Supp. 2d 125, 129 (D. Mass. 2012) (applying Federal Circuit law) ("Courts in nearly every circuit have held that the court in which the second action was filed should defer to courts in the first-filed action.").

Indeed, the Supreme Court has held that the appropriate means to enforce a forum selection clause is by a motion to transfer or a motion under the doctrine of *forum non conveniens* pursuant to 28 U.S.C. § 1404(a) in the court where the claims were allegedly wrongly filed. *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 134 S. Ct. 568, 578 (2013). By filing Motions to Change Venue in Texas, Comcast has already requested that the Texas court decide the same forum selection arguments it presents to this Court. The Texas court, as the court overseeing the first filed cases, should be permitted to decide whether it or this Court should consider the merits of the patent infringement issues. *See Futurewei Techs., Inc. v. Acacia Research Corp.*, 737 F.3d

8

704, 707-08 (Fed. Cir. 2013) (affirming dismissal of second filed action, concluding that first court would determine whether a forum selection clause should be enforced). In reliance on these same principles, Rovi has separately moved to dismiss, stay, or transfer this action. *See* Dkt. 49.

## IV.   COMCAST'S REQUEST FOR A PRELIMINARY INJUNCTION FAILS ON THE MERITS AND SHOULD BE DENIED

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008). The party seeking a preliminary injunction has the burden to establish all four elements: "(1) he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Id.* at 20. Injunctions are "serious orders" and where granted must be "narrowly tailored to fit specific legal violations." *Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254, 263, 272 (2d Cir. 2011) (quotation and citation omitted). Comcast cannot establish any of the four elements and is not entitled to a preliminary injunction enjoining either Rovi's ITC action or its Texas cases.

### A.   <u>Comcast Is Unlikely To Succeed On The Merits</u>: The Venue Provisions In The Patent License And Software License Do Not Apply To The ITC Action And The Texas Cases.

Comcast failed to establish that it is likely to succeed on the merits of its claims that Rovi breached the forum selection clauses in either the Patent License or the Software License.

When determining the scope of a forum selection clause, the Court applies the law of the agreement, "examin[ing] the substance of th[e] claims, shorn of their labels," and compares the substance "to the precise language of the clause." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 388-89 (2d Cir. 2007); *see also S.K.I. Beer Corp. v. Baltika Brewery*, 612 F.3d 705, 708 (2d Cir. 2010). Courts tend to look with "skepticism" where a party manufactures a dispute in order to

9

import a forum selection clause from an otherwise ancillary agreement that is not related to the claims at issue. *Indus. Print Techs. LLC v. Canon U.S.A., Inc.*, No. 2:14-CV-00019, 2014 WL 7240050, at *5 (E.D. Tex. Dec. 19, 2014).

No claim of any type asserted by Rovi against Comcast in the ITC or Texas proceedings falls within either of the forum selection clauses of either the Patent License or the Software License. Nevertheless, the legal inquiry by this Court must focus on individual claims. Where one claim falls within a forum selection clause, and another does not, the clause will be enforced only as to the claim that falls within it, allowing the other claims to proceed in the original forum. *Phillips*, 494 F.3d at 393. The Second Circuit has thus recognized the need to balance "twin commitments to upholding forum selection clauses where these are found to apply and deferring to a plaintiff's proper choice of forum," even if it results in "piecemeal" litigation. *Id.* Here, each claim made by Comcast as to each agreement, each accused product and each allegation made by Rovi in the ITC action and Texas cases must each be analyzed separately to determine whether the claim falls within or outside the forum selection provisions of the relevant agreement. The forum selection clauses of the Patent License or Software License may be enforced as to only those claims, products and allegations specifically found by the Court to fall within them.

1. <u>The Forum Selection Clause In The Expired Patent License Does Not Bar Any Of Rovi's Infringement Claims At The ITC Or In Texas.</u>

As a threshold matter, the narrow forum selection clause in the expired Patent License cannot bar any of Rovi's patent infringement claims in either the ITC or in Texas. By its terms, the provision applies only to claims that "arise from" the Patent License. Dkt. 28-5 § 23. As a matter of law, Comcast must demonstrate that the claims at issue in the ITC or Texas "originate from" the Patent License. *Phillips*, 494 F.3d at 389-91(concluding that to "arise from" means "to

10

originate from"); *Corcovado Music Corp. v. Hollis Music, Inc.*, 981 F.2d 679, 682 (2d Cir. 1993). Comcast failed to meet that burden.

     Rovi's ITC action and Texas cases are straightforward complaints for damages, injunctive relief, and unfair importation of articles all singularly based on patent infringement. In a complaint filed April 6, 2016 before the International Trade Commission, and as amended on April 25, 2016, Rovi accused Comcast of infringing claims of seven patents. *See In the Matter of Certain Digital Video Receivers and Hardware and Software Components Thereof*, Inv. No. 337-TA-1001 (ITC Apr. 6, 2016), Dkt. 28-6. In cases in the Eastern District of Texas filed on April 1, 2016 (and subsequently amended on April 25, 2016), Rovi also accuses Comcast of infringing claims of fifteen patents. *See* Dkt. 28-7; Dkt. 28-8. As set forth in its complaints, Rovi seeks relief for acts of patent infringement that occurred "without authority or license." *See* Dkt. 28-7 ¶¶ 149, 205, 248, 292, 344, 390, 437, and 476; Dkt. 28-8 ¶¶ 154, 179, 206, 250, 292, 334, and 373.

     Because Rovi's patent infringement claims against Comcast in the ITC and in Texas arise in statute, as opposed to contract, they cannot "originate from" the Patent License as a matter of law. *Phillips*, 494 F.2d at 391 ("Phillips' copyright claims do not arise out of the contract because Phillips has asserted no rights or duties under that contract."); *Corcovado*, 981 F.2d at 681-83 ("[W]here a plaintiff sues for copyright infringement and asserts no rights under a contract with the defendant containing a forum-selection clause, the forum-selection clause has no effect."); *Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 645-46 (S.D.N.Y. 2008) (concluding, in the context of a forum selection clause limited to "any claim or controversy arising under this Agreement," that "Plaintiffs' remaining claims against [Defendant] do not

assert rights under the contract, but rather assert rights arising under federal copyright and trademark law, as well as common law unfair competition.").

Separately, and equally dispositive, the forum selection clause in the Patent License cannot apply to Rovi's infringement claims because the Patent License expired on March 31, 2016, and Rovi filed its Texas cases and ITC action thereafter. Comcast argues that "Rovi's actions alleg[e] pre-March 31, 2016 infringement," Dkt. 27 at 19, but that is demonstrably false and contradicted by the relief sought and the pleadings themselves. As to the ITC, Comcast's argument is legally impossible. Relief before the ITC is *prospective*, and Rovi brought suit in the ITC after the Patent License expired. *See* 19 U.S.C. § 1337(d); *Suprema, Inc. v. ITC*, 796 F.3d 1338, 1345 (Fed. Cir. 2015). Similarly, and as to the Texas cases, Rovi's infringement claims seek only *prospective* relief and are expressly limited to infringement "without authority or license." *See Conopco, Inc. v. Pars Ice Cream Co., Inc.*, No. 13 Civ. 1083 (JSR), 2013 WL 5549614, at *6 (S.D.N.Y. Sept. 26, 2013) (holding that forum selection clauses in expired agreements were inoperative); *Innovative Display Techs. LLC v. Microsoft Corp.*, No. 2:16-cv-00783-JRG, 2014 WL 2757541, at *6 (E.D. Tex. June 17, 2014) (concluding that a forum selection clause did not apply because alleged infringement took place after expiration of the license); *Video Streaming Solutions LLC v. Microsoft Corp.*, No. 13 C 7031, 2014 WL 2198480, at *4 (N.D. Ill. May 27, 2014) (when damages being sought are limited to post-expiration activities, the forum selection clause in not applicable to such claims); *see also* Ex. 10 (letter from Rovi to Comcast, and the other Defendants, reiterating that Rovi is not making a claim for damages for any infringing conduct that pre-dates expiration of the Patent License).

As a matter of law therefore, the forum selection clause of the Patent License is not implicated by any of Rovi's claims in the ITC or in Texas. Thus, the forum selection clause in

12

the expired Patent License can have no effect on Rovi's patent infringement claims in either the ITC or Texas.

> 2. The Forum Selection Clause In The Software License Does Not Bar Any Of Rovi's Patent Infringement Claims At The ITC Or In Texas.

For different reasons, the forum selection clause in the Software License also does not apply to Rovi's patent infringement claims in any forum, as to any product, or as to any Defendant.

> a. *The Forum Selection Clause In The Software License Does Not Bar Any Of Rovi's Patent Infringement Claims In Texas Or The ITC Because It Does Not Grant Any Patent Rights.*

The Software License is a *software* license. It does not bestow any patent rights, which are separately governed by the contemporaneously negotiated, and now expired, Patent License.

Under New York law, "a written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed." *Cruden v. Bank of New York*, 957 F.2d 961, 976 (2d Cir. 1992). Separate agreements executed contemporaneously as part of the same transaction are to be read together. *This Is Me, Inc. v. Taylor*, 157 F.3d 139, 143 (2d Cir. 1998); *see also Kelso Enters. Ltd. v. A.P. Moller-Maersk A/S*, 375 F. App'x 48, 49 (2d Cir. 2010) ("[W]hen interpreting a contract or multiple contracts in a transaction, we strive to give effect to all of the terms of the relevant documents, reading them together.").

The separate treatment of patent rights by the Patent License and other intellectual property rights, including software and copyrights, by the Software License, is evident from the terms of the agreements which were negotiated together under the same overarching Master Agreement between the parties. Section 2.01 of the Software License, the very provision cited by Comcast (*see* Dkt. 27 at 5), makes no mention of patent rights. Dkt. 28-4 § 2.01. "Software" is

defined in the Software License to include software and copyrights of software documentation and code, ***but not patents***: "*software* (including source code, object code and APIs) and documentation (including any flow charts and programmer's notes), including any copyrights or copyrightable works included in such software documentation and code." *Id.* § 1.01. Thus, the Software License has no express grant of patent rights whatsoever (which, as discussed below, were reserved to Rovi) and were separately and contemporaneously granted to Comcast to use for a defined term in the (now expired) Patent License. This express intention to omit patent rights from the Software License should be given its "full meaning and effect to [the entirety of the Software License]." *LaSalle Bank Nat'l. Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (quotation and citation omitted); *Gordon v. Vincent Youmans, Inc.*, 358 F.2d 261, 263 (2d Cir. 1965) ("[I]t is both good sense and good law that these closely integrated and nearly contemporaneous documents be construed together.") (quotation and citation omitted).

> b.  *The Forum Selection Clause In The Software License Also Does Not Bar Any Of Rovi's Claims In The ITC Action Because New York Courts Have No Subject Matter Jurisdiction Over ITC Claims.*

Even if the Software License could be construed to have granted patent rights to Comcast (which, by its express terms, it does not), the forum selection clause in the Software License would still not apply to Rovi's ITC claims. That provision provides that suits, actions, or proceedings "shall be brought in the United States District Court for New York or any New York State court sitting in New York County, *so long as one of such courts shall have subject matter jurisdiction over such suit, action or proceeding*" Dkt. 28-4 at § 12.09 (emphasis added). No state or federal court in New York (including this Court) has subject matter jurisdiction over Rovi's ITC claims, which arise from Section 337 of the Tariff Act of 1930. Instead, the International Trade Commission, in Washington, D.C., has *exclusive* jurisdiction over unfair

14

importation practices. *See* 19 U.S.C. § 1337; *Potter v. Toei Animation Inc.*, 839 F. Supp. 2d 49,

53 (D.C. 2012) ("If Plaintiff wishes to seek relief for violations of *section 337* of the Act, 19

U.S.C. § 1337, which pertains to unfair importation practices, he must first file a complaint with

the International Trade Commission."); *Ashlow Ltd. v. Morgan Constr. Co.*, 672 F.2d 371, 375

(4th Cir. 1982) ("In short, the Congress has created two separate jurisdictions: One with

jurisdiction over 'unfair acts' in connection with the importation of articles from abroad (the

Commission), and the other with jurisdiction over the validity of domestic patents (the district

court).").

> c. *The Forum Selection Clause Of The Software License Also Does Not Bar Rovi's Infringement Claims As To Comcast's X1 (Non-Legacy) Products.*

Rovi's infringement claims in Texas and at the ITC are directed to both Comcast's X1

(including its Non-Legacy Products) and its Legacy Products. The X1 products are accused of

infringing each patent at issue in the Texas cases and at the ITC, while Rovi accuses the Legacy

Products of infringing only some (but not all) of those patents. *See* Exs. 2-9. This is an important

distinction because Comcast does not contend that its X1 products are "derivative works" under

the Software License and therefore Comcast does not substantively contend that the Software

License bars any of Rovi's infringement claims as to the X1 products in any forum. Dkt. 27 at 4.

Because there is *no dispute* that Comcast's X1 products do not fall within the Software License,

this Court should not enjoin any of Rovi's claims, in any forum, as to those products.[6]

---

[6] In fact, Rovi recently served infringement contentions in the -321 Case in Texas. For four of the eight patents asserted (U.S. Patent Nos. 9,172,987; 7,895,218; 8,122,034; and 8,433,696), Rovi accuses only X1 products, not Legacy Products. *See* Exs. 2-5. At the very least, then, Rovi's infringement claims as to these four patents should not be enjoined because Rovi's claims as to these patents are limited only to the X1 products—products which Comcast admits do not implicate the Software License.

The only mention of X1 (or Non-Legacy Products) in Comcast's motion is in a footnote, where Comcast asserts—without authority—that because Rovi's claims against X1 are "part of the same actions" as Rovi's claims against the Legacy Products, Rovi should also be enjoined from seeking relief in Texas on those products. Dkt. 27 at 17 n.8. But that contention makes no sense, and the law requires just the opposite. To Comcast's own cited authority, "[a]n infringement dispute over a product that is clearly not licensed cannot be said to arise from the license agreement." *Tessera, Inc. v. Advanced Micro* Devices, No. C 05-4063, 2007 WL 3232441, at *5 (N.D. Cal. Nov. 1, 2007) (Dkt. 27 at 13). Comcast's X1 products are "clearly not licensed" by the Software Agreement and Comcast does not allege that they are.

Because Comcast has made *no showing* as to the X1 products falling within the venue provision of the Software License, Rovi's infringement claims as to those products should not be enjoined in either the ITC or in Texas. *See Tessera*, 2007 WL 3232441, at *5-6 (finding that only patent claims accusing arguably licensed products could be enjoined); *Phillips*, 494 F.3d at 393 (allowing related claims to proceed in two forums, even if the result requires piecemeal litigation). Injunctive relief must be *narrowly tailored* to fit the alleged violation. *Patsy's Italian Rest.*, 658 F.3d at 272.

> d. *The Forum Selection Clause Of The Software License Also Does Not Bar Rovi's Infringement Claims As To Comcast's Legacy Products In The ITC Or Texas.*

Comcast raises two arguments that the forum selection clause in the Software License applies to Rovi's claims accusing Comcast's Legacy Products: (i) that the Legacy Products are impliedly "licensed by" the Software License and (ii) that the Legacy Products are protected from Rovi's infringement claims by the doctrine of patent exhaustion. Both are frivolous; Comcast manufactures a dispute over the Software License where none exists in an attempt to invoke its venue provision.

**The Software License is not an implied patent license**. Recognizing that the Software License does not expressly grant Comcast the right to use Rovi's patents (even for the Legacy Products), Comcast argues that "[b]y licensing to Comcast a right to the Legacy Guides' software, the [Software License] provides Comcast an *implied* license to any Rovi patent implicated by that software." Dkt. 27 at 15 (emphasis added). Comcast's implied license argument is frivolous for three reasons:

*First*, an implied patent license is precluded by the agreement itself. The Software License, which by its terms did not grant a patent license, explicitly excludes implied rights: "All rights in (a) the Rovi software . . . in each case to the extent not expressly granted herein, are hereby expressly reserved by RoviGuides and its Affiliates." Dkt. 28-4 § 2.03. By its own terms, then, the Software License could not impliedly bestow patent rights. All Rovi Software rights not expressly granted under that agreement (and patents were not expressly granted) were reserved by Rovi.

*Second*, Comcast disregards binding authority that an implied patent license cannot coexist with an express patent license. "[W]here an agreement contains a specific provision expressly defining the scope of the patent license implied licenses dealing with the same subject matter are not generally recognized." *Intel Corp. v. Broadcom Corp.*, 173 F. Supp. 2d 201, 213 (D. Del. 2001); *see also Atlas Corp. v. United States*, 895 F.2d 745, 754-55 (Fed. Cir. 1990) ("The existence of an express contract precludes the existence of an implied contract dealing with the same subject, unless the implied contract is entirely unrelated to the express contract."). "[A] contract cannot be implied *in fact* . . . where there is an express contract covering the subject-matter involved." *Bader v. Wells Fargo Home Mortg., Inc.*, 773 F. Supp. 2d 397, 413 (S.D.N.Y. 2011) (emphasis in original) (quotation and citation omitted); *see also Wal-Noon*

17

*Corp. v. Hill*, 45 Cal. App. 3d 605 (Cal. Ct. App. 1975). Here, there is an express contract (the now expired Patent License), part of the same overarching 2010 Master Agreement, and negotiated contemporaneously with the Software License, expressly covering the very patent rights that Comcast contends were impliedly included in the Software License. Because patent rights were expressly, and separately, granted in the contemporaneously negotiated, and now expired Patent License, Comcast's argument that the Software License bestows an implied patent license is a legal impossibility.

   *Third*, Comcast ignores binding authority that holds that the mere right to use software does not convey a patent license. *Hilgraeve Corporation v. Symantec Corporation* is controlling. 265 F.3d 1336, 1344 (Fed. Cir. 2001). In *Hilgraeve*, Symantec argued that a "Technology Transfer Agreement," which transferred "all copyright rights to the Software," included the necessary know-how and technical expertise with respect to the Software, and thereby patent rights as well. *Id.* at 1344-45. Symantec urged the court to find that "'Software' is more than source code and object code" and "[w]hen read in conjunction with the . . . 'know-how' and 'technical expertise,'" provided in the software agreement also implicitly included patent rights to that software. *Id.* at 1345. The Federal Circuit rejected this argument: "We cannot say (and it does not 'go without saying') that where the contract provided for the transfer of copyrights in the software, but failed to mention the transfer of patent rights, that we must imply such a term to the contract. The contract has a business efficacy without adding this unexpressed term to it." *Id.*

   The Federal Circuit reached a similar conclusion in *State Contracting & Engineering Corporation v. Florida*, where it found that a grant of "all rights to use, duplicate or disclose [software], in whole or in part, in any manner and for any purpose whatsoever, and to have or permit others to do so" did not impart a license to patent rights. 258 F.3d 1329, 1339 (Fed. Cir.

18

2001) (emphasis omitted); *see also Intel Corp.*, 173 F. Supp. 2d at 213 (finding no implied patent license where a contract provision bestows intellectual property rights other than patents).

As a matter of law, the transfer of copyright and software code, without an explicit mention of patent rights, simply does not confer patent protection. Here, because the Software License did no more than license copyright and source code and did not expressly confer patent rights, expressly reserved to Rovi all rights not conveyed (including patents), and further because those patent rights were actually conveyed in a contemporaneous but separate (and now expired) Patent License agreement, the Software License could not have granted Comcast *implied* patent rights to any Rovi patent.

**Rovi's Patent Rights Are Not Exhausted By the Software License**. Comcast's exhaustion argument is equally frivolous for two reasons:

*First,* patent exhaustion is triggered only by the authorized *sale* or other *transfer of title*, by the patent holder or its licensee, of an article that substantially embodies the exhausted patent. *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 636, 638 (2008) ("Exhaustion is triggered *only by a sale* authorized by the patent holder."; "[t]he authorized sale of an article that substantially embodies a patent exhausts the patent holder's rights."); *Helferich Patent Licensing LLC v. New York Times Co.*, 778 F.3d 1293, 1297 n.1, 1301 (Fed. Cir. 2015) (explaining that exhaustion protects "authorized acquirer[s]," which "refer to those who *acquire title* to the article at issue from the patentee or from a licensee authorized to sell") (emphasis added); *LifeScan Scotland Ltd. v. Shasta Techs. LLC*, 734 F.3d 1361, 1374 (Fed. Cir. 2013) (explaining that exhaustion occurs "when the patented product 'passes to the hands' of a transferee and when he 'legally acquires a *title*' to it") (citation omitted).

In contrast, Comcast's exhaustion defense is based solely on the *license* of certain software to Comcast under the Software License—not the sale of or other transfer of title to the software, or any other article. Comcast's "exhaustion" defense is really just its implied license defense under a different name. It is axiomatic that because the Software License granted no patent rights (as discussed above), any sales of the Legacy Products by Comcast were not patent-authorized by the Software License. In the absence of a patent-authorized sale there can be no exhaustion. While Comcast points to *LG Electronics, Inc. v. Hitachi, Ltd.* to purportedly support its contention that a "license" can constitute a sale for exhaustion purposes, that case is inapposite. *LG Electronics* stands for the unremarkable proposition that a *patent* license may authorize future sales of patented articles to which exhaustion would then attach. 655 F. Supp. 2d 1036, 1044 (N.D. Cal. 2009). But again, as discussed above, in contrast to the parties' Patent License, their Software License is not a patent license—it conveyed *no* patent rights whatsoever.[7]

*Second*, and equally important, exhaustion attaches only to the particular patent-authorized article that was sold, and not to any reproduction thereof. *Bowman v. Monsanto Co.*, 133 S. Ct. 1761, 1764 (2013); *Quanta*, 553 U.S. at 638. Thus, *even if* title to a copy of the Rovi Software passed to Comcast in 2010 (no such event occurred), exhaustion would attach *to that particular copy only*, such that Comcast would be free to dispose of only that particular copy. Under controlling Supreme Court precedent, exhaustion does not reach copies of Comcast's allegedly derivative Legacy Guide resident on the set-top boxes provided to its subscribers—the

---

[7] And, because the Patent License expired, and Rovi is only suing Comcast for post-Patent License expiration acts of infringement, the Patent License also does not implicate exhaustion.

20

focus of Rovi's infringement allegations for the subset of patents that implicate the Legacy Products.

Moreover, Comcast's exhaustion defense is rooted in Comcast's assumption that Rovi contends that its Legacy Products infringe, or "embody" each one of the patents-in-suit. Dkt. 27 at 16. But that is not true as to all asserted patents. As set forth in Rovi's recent infringement contentions in the -321 Texas case, Rovi accuses only X1 products (Non-Legacy Products) of infringing four of the eight patents at issue in that case (the '987; '218; '034; and '696 Patents). *See* Exs. 2-5. Exhaustion *cannot attach* to those patents because they do not implicate the Legacy Products at all. Exhaustion also cannot attach to the '218 Patent,'034 Patent, or the '696 Patent for an additional reason: Rovi did not acquire these patents until its acquisition of Veveo, Inc. in 2014—*after* the execution of the Software License in 2010. *See* Ex. 12. Exhaustion also cannot attach to the '281 Patent, which is also at issue in the -321 Texas case, because Rovi did not acquire this patent from Microsoft until 2014. *See* Ex. 13. It would be impossible, therefore, for the software that was allegedly "sold" by Rovi to Comcast in 2010 to "embody" *for exhaustion purposes* any of the '218,'034,'696 , or '281 Patents that were not acquired by Rovi  until 2014, and Comcast's exhaustion arguments as to those patents also fails for this reason.

        e.       *The Forum Selection Clause Of The Software License Also Does Not Bar Any Of Rovi's Claims Against The Other Defendants In The ITC And The Texas Cases.*

Comcast's arguments that Rovi's infringement claims against Comcast's STB suppliers in the ITC action and Texas cases also fall within the scope of the forum selection clauses of the Patent License and Software License fail for the same reasons that those provisions do not apply to Rovi's infringement allegations against Comcast. Comcast argues that the Patent License's forum selection clause governs because Rovi alleges infringement against the STB suppliers for STBs provided to Comcast prior to the expiration of the Patent License, Dkt. 27 at 19-20, a

demonstrably untrue mischaracterization of Rovi's allegations, as explained above. An

infringement claim does not "originate from" from a license agreement and the Patent License is

just as inapplicable to Rovi's claims against the STB suppliers as it is to Rovi's claims against

Comcast. *Phillips*, 494 F.3d at 393.

     In addition, Comcast argues that the forum selection clause of the Software License

applies to Rovi's claims against the STB suppliers because the Software License permits

Comcast to provide its Legacy Guide software to the STB suppliers for integration with STBs.

Dkt. 27 at 19-20. For the reasons explained above, however, the Software License does not

confer, either expressly or impliedly, any patent rights, rendering the forum provision of the

Software License totally irrelevant. And, as also explained above, not all of Rovi's infringement

allegations for all patents implicate the Legacy Products.

     **B.**    <u>**Comcast Will Not Suffer Irreparable Harm In The Absence Of Preliminary Relief**</u>**: It Instigated A Duplicative Suit In This Court And Its Alleged Harm Is Not Irreparable.**

        1.   <u>Comcast Instigated A Duplicative Suit In This Court By Seeking Declaratory Relief On The Fifteen Patents Already At Issue In The ITC And Texas.</u>

     There is, at best, irony in Comcast's argument that, without injunctive relief, it "will be

forced to engage in burdensome, duplicative, and fast-paced litigation on multiple fronts, causing

it to suffer the inconvenience, disruption of its business, loss of good will, and financial business

hardship from the duplicative actions." Dkt. 27 at 21 (internal citation and quotations omitted). It

is *Comcast* that has duplicated litigation and invited conflicting rulings by bringing the same

arguments in two federal forums at the same time, and thereby disregarded the first-to-file rule,

well-established principles of comity and judicial economy, and the *Atlantic Marine* Supreme

Court precedent concerning the appropriate means to enforce a forum selection clause. Indeed,

while Comcast has asked this Court to enjoin the ITC case from proceeding, Comcast did not

(and still has not) asked the ITC for that relief—neither before institution when Comcast had the opportunity to get this issue in front of the Commissioners before they voted to commence an investigation nor after institution. If Comcast suffers harm by duplicative proceedings, it is a problem of its own making.

Moreover, even if the Court were inclined to grant Comcast's request to enjoin Rovi from pursuing its ITC action and Texas cases, Comcast would still be subject to the burdens of litigating fifteen patents. The burden would simply shift from the ITC and Texas to litigating those same patents in this Court. Comcast cannot show that the burden of litigating fifteen patents in this Court—the very declaratory relief it has requested—is so substantially less than litigating the same claims in Texas (and a subset of those claims at the ITC) so as to justify injunctive relief.

2.   <u>Injunctive Relief Is Not Available To a Claimant That Creates The Harm<br>About Which It Seeks Protective Relief.</u>

It is black letter law that "a party may not satisfy the irreparable harm requirement if the harm complained of is self-inflicted." 11A Wright & Miller, Federal Practice & Procedure Civ. § 2948.1 (3d ed.) "[S]elf inflicted wounds are not irreparable injury. Only the injury inflicted by one's adversary counts for this purpose." *Second City Music, Inc. v. City of Chicago, Ill.*, 333 F.3d 846, 850 (7th Cir. 2003). Here, it is *Comcast* that has duplicated the litigation of which it complains by flouting principles of judicial economy, by filing the same claims in two federal courts at the same time, and by filing motions premised on virtually identical arguments before those same two courts. Comcast can hardly claim that it has suffered irreparable harm by duplicative litigation of its own making.

23

3.   Comcast's Alleged Harm Is Not Irreparable Because It Is Compensable Monetarily.

Comcast also misses the mark in asserting that the expense of litigating in multiple forums subjects it to irreparable harm. Putting aside that Comcast complains of self-inflicted injury, its argument fails for an independent reason: any such harm would be compensable in monetary damages. By definition, such harm is not irreparable. *See Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury."); *Bruce v. Martin*, 680 F. Supp. 616, 620-21 (S.D.N.Y. 1988) ("In considering requests for injunctive relief, courts have routinely followed the Supreme Court's holding in [*Renegotiation Bd.*], that 'mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.'").

**C.    Comcast Failed To Establish The Remaining Preliminary Injunction Factors.**

If anything, the balance of equities favors Rovi. Comcast's litigation conduct and duplicitous proceedings are more harmful to Rovi than to Comcast. Comcast filed a second case in this Court demanding a finding of non-infringement as to the same patents that are at issue in the first filed cases in Texas, seeks to have the wrong court (as a matter of law) adjudicate which court should proceed, and forces Rovi to engage counsel, time and resources to litigate the same issues here and in opposing Comcast's motions to transfer in Texas.

The public interest further favors denial of Comcast's motion. The first to file rule itself is based on the public interest in judicial economy. Duplicative litigation wastes valuable public resources, and the risk of inconsistent rulings undermines trust in the judicial framework. It is for this very reason that courts have imposed their own regimen to ensure comity and judicial economy: the federal court of the first filed action must determine where a case should proceed, including the applicability of an asserted forum selection clause. Indeed, the Second Circuit has

24

recognized the public interest in deferring to a plaintiff's choice of forum. *Phillips*, 494 F.3d at 393.

**V.   CONCLUSION**

For the foregoing reasons, this Court should deny Comcast's motion because Comcast's forum arguments must be addressed in the first-filed action in Texas. In the alternative, if the Court reaches the merits, Rovi respectfully submits that Comcast's motion should be denied, and Rovi's claims should proceed in the forum in which they were brought. In the unlikely event, however, that the Court determines that *some* claims as to *some* products should be enjoined (*e.g.*, claims directed to the Legacy Products), the *remainder* of the claims must proceed in each original forum.

Dated: June 22, 2016.                    Respectfully submitted,

                                         **MCKOOL SMITH, P.C.**

                                         By: */s/ Douglas A. Cawley*
                                         Douglas A. Cawley (appearing *pro hac vice*)
                                         dcawley@mckoolsmith.com
                                         300 Crescent Court, Suite 1500
                                         Dallas, Texas 75201
                                         Telephone: (214) 978-4000
                                         Telecopier: (214) 978-4044

                                         Roderick G. Dorman (appearing *pro hac vice*)
                                         rdorman@mckoolsmithhennigan.com
                                         300 South Grand Avenue Suite 2900
                                         Los Angeles, CA 90071
                                         Telephone: (213) 694-1200
                                         Telecopier: (213) 694-1234

                                         Joshua W. Budwin (appearing *pro hac vice*)
                                         jbudwin@mckoolsmith.com
                                         300 W. Sixth Street, Suite 1700
                                         Austin, Texas 78701
                                         Telephone: (512) 692-8700
                                         Telecopier: (512) 692-8744

                                         Benjamin Levi
                                         blevi@McKoolSmith.com
                                         1999 K Street NW, Suite 600
                                         Washington, DC 20006-1001
                                         Telephone: (202) 370-8300
                                         Telecopier: (202) 370-8344

                                         Gayle R. Klen
                                         gklein@mckoolsmith.com
                                         Lauren Fornarotto
                                         lfornarotto@mckoolsmith.com
                                         One Bryant Park, 47th Floor
                                         New York, NY 10036
                                         Telephone: (212) 402-9400
                                         Telecopier: (212) 402-9099

**ROPES & GRAY LLP**

Jesse J. Jenner
ROPES & GRAY LLP
Jesse.jenner@ropesgray.com
New York, NY 10036-8704
Telephone: (212) 596-9000
Telecopier: (212) 596-9090

James R. Batchelder (appearing *pro hac vice*)
James.batchelder@ropesgray.com
Mark D. Rowland
Mark.rowland@ropesgray.com
Andrew Radsch
Andrew.radsch @ropesgray.com
1900 University Avenue, 6th Floor
East Palo Alto, California 94303
Telephone: (650) 617-4000
Telecopier: (650) 566-4090

*Attorneys for Rovi Corporation, Rovi Guides, Inc., Rovi Technologies Corp., and Veveo, Inc.*